**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                     Case No.: 6:18-bk-07371-KSJ
                                                           Chapter 11
**METRO FINISHES, LLC,**                                   EIN: 60-0002713

             Debtor.
_____/

**PLAN OF REORGANIZATION SUBMITTED BY METRO FINISHES, LLC**

**COUNSEL FOR DEBTOR**

Jeffrey S. Ainsworth, Esquire
Florida Bar No.: 0060769
E-mail: *jeff@bransonlaw.com*
**BransonLaw, PLLC**
1501 East Concord Street
Orlando, Florida 32803
Telephone: (407) 894-6834
Facsimile: (407) 894-8559

**May 24, 2019**

PURSUANT TO 11 U.S.C. § 1125 NOTHING CONTAINED IN THIS PLAN OF REORGANIZATION OF METRO FINISHES, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED APRIL 24, 2019 (THE "<u>PLAN</u>") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DEBTORS' DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN. THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED OR AN AMENDED AND RESTATED PLAN AND AN AMENDED OR AN AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME HEREAFTER. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTORS' HISTORY, BUSINESS, PROPERTY, AND OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE BANKRUPTCY CASES, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................ 4

**ARTICLE I – DEFINITIONS – INTERPRETATION** ................ 4

**ARTICLE II – TREATMENT AND CLASSIFICATION
OF CLAIMS AND INTERESTS** ................................................ 13

**ARTICLE III – ADMINISTRATIVE EXPENSES** .................... 15

**ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES** ... 16

**ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS** .. 16

**ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES** 19

**ARTICLE VII – MEANS OF IMPLEMENTATION OF PLAN** ... 20

**ARTICLE VIII – PROVISIONS GOVERNING DISTRIBUTION** .. 22

**ARTICLE IX – PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS** ................................ 23

**ARTICLE X – TRUSTEE FEES** ............................................... 24

**ARTICLE XI – DISCHARGE, LIMITATION OF
LIABILITY, GENERAL INJUNCTION, AND CAUSES OF ACTION** .. 24

**ARTICLE XII – RETENTION OF JURISDICTION** ................. 25

**ARTICLE XIII – MISCELLANEOUS PROVISIONS** ............... 25

# INTRODUCTION

METRO FINISHES, LLC proposes the following plan of reorganization (the "**Plan**") pursuant to chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. Reference is made to the Disclosure Statement for a discussion of the Debtor's known history, as well as a summary and analysis of the Plan and other related matters, including distributions to be made under the Plan. Debtor, METRO FINISHES, LLC, is the proponent of the Plan (the "**Plan Proponent**") within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for: 1 class of priority claims; 10 classes of secured claims; 1 class of unsecured claims; and 1 class of equity security holders.

Only holders of certain Claims and Equity Interests specified in the Plan are entitled to vote on the Plan. **ALL CREDITORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY AND CONSULT WITH COUNSEL AND OTHER APPLICABLE PROFESSIONALS BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. WITHOUT LIMITING THE FOREGOING, ALL HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE URGED TO CAREFULLY READ THE EXCULPATION AND INJUNCTION PROVISIONS SET FORTH HEREIN.**

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

# ARTICLE I – DEFINITIONS – INTERPRETATION

A.   **Definitions**

For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

**1GC** shall mean 1 Global Capital, LLC.

**Administrative Claim** shall mean any Claim for the payment of an Administrative Expense.

**Administrative Claims Bar Date** shall mean, the last day established by the Bankruptcy Court for filing an application, request, or motion for an Administrative Claim.

**Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 Case that is allowed under §§ 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, request or motion seeking

such cost or expense in the Chapter 11 Case on or before the applicable Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the estate or operating the business of the Debtor in Possession (including wages, salaries, or commissions for services rendered) incurred after the Petition Date, (ii) any post petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business, (iii) any claim granted administrative priority status by a Final Order of the Bankruptcy Court, and (iv) compensation or reimbursement of expenses of professionals awarded or Allowed pursuant to an order of the Bankruptcy Court under §330(a) or 331 of the Bankruptcy Code, 28 U.S.C. §§ 1911-30; and (v) any and all other costs or expenses of administration of the Chapter 11 Case that are Allowed by a Final Order of the Bankruptcy Court; provided, however, that notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any transferred claim, any Disallowed Claim, or unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 12.

**AFK** shall mean AFK, Inc., d/b/a FundKite

**AFK Collateral** shall mean certain "receipts" of the Debtor.

**Allowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent Allowed by a Final Order; (b) Allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant to U.S.C. § 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Line underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Assets** shall mean all the assets, property, and cash of the Debtor, as defined in § 541 of the Bankruptcy Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

**Ballot** shall mean the ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims or Impaired Equity Interests entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the voting instructions.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Code** shall mean 11 U.S.C. §101 *et seq*., and any amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, and any Bankruptcy Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended ("The Local Rules").

**Bar Date** shall mean either March 25, 2019, for non-governmental units or 180 days from the Petition Date, for governmental units, the dates fixed by order of the Bankruptcy Court by which proofs of Claim or Interest must be filed against the Debtor.

**Business Day** shall mean any day except Saturday, Sunday, or any legal holiday.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Acton** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtor: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-551 (or equivalent provisions of applicable non-bankruptcy law); and (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtor, and any party named or identified in the Debtor's schedules or statement of financial affairs, any pleadings filed in this Chapter 11 case, and (c) the Debtor's right of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Celtic** shall mean Celtic Bank, its successors, assigns and representatives, d/b/a Kabbage.

**CFG** shall mean CFG Merchant Solutions, LLC.

**Chapter 11 Case** shall mean the Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court, specifically Case No. 6:18-bk-07371-KSJ under the caption *In re Metro Finishes, LLC.*

**Chrysler Capital** shall mean Chrysler Capital.

**Chrysler Collateral** shall mean that certain 2016 Jeep Grand Cherokee Ltd., VIN: 1C4RJEBG3GC335872.

**Claims Objection Bar Date** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Class** shall mean a group of Claims of Interests substantially similar to each other as classified under this Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.* shall mean the specific Class into which Claims, or Interests are classified pursuant to Article II of the Plan.

**CMS** shall mean Capital Merchant Services, LLC.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1129 of the Code.

**Confirmation Date** shall mean the date the Confirmation Order becomes final and non-appealable.

**Confirmation Hearing** shall mean the hearing set by the Bankruptcy Court for the hearing on confirmation of the Debtor's Plan.

**Confirmation Order** shall mean the order entered by the Bankruptcy Court confirming the Plan.

**Debtor** shall mean Metro Finishes, LLC.

**Debtor-in-Possession** shall mean Metro Finishes, LLC, as Debtor-in-possession in this Chapter 11 Case.

**Disallowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent fourteen (14) days have expired since the Claim or Interest was disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such fourteen (14) day period and granted, in which case the Claim or Interest shall be disallowed thirty (30) days after entry of the order disallowing such Claim or Interest, unless

prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

**Disclosure Statement** shall mean the joint disclosure statement of the same date as this Plan that was filed by the Debtor and approved by the Bankruptcy Court pursuant to Bankruptcy Code Section 1125 and any amendments thereto, including all exhibits.

**Disputed Claim** shall mean any Claim other than a Disallowed Claim that has not been Allowed by an order of the Bankruptcy Court and as to which (a) a Proof of Claim has been filed with the Bankruptcy Court or is deemed filed under applicable law or order of the Bankruptcy Court, and (b) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been: (i) withdrawn; (ii) overruled or denied by an order of the Bankruptcy Court; or (iii) granted by an order of the Bankruptcy Court.  In addition to the foregoing, a Disputed Claim shall also mean a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if (a) the amount of Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Debtor's schedules or set forth in the Plan, (c) any corresponding Claim has been scheduled in the Debtor's schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Debtor's schedules, or (e) such claim is reflected as unliquidated or contingent in the Proof of Claim filed with respect thereof.  To the extent an objection relates to the allowance of only a part of the Claim, such Claim shall be a Disputed Claim only to the extent of the objection.  To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Distribution Date** when used with respect to each Claim or Interest shall mean the date on which distributions to the Holder of the Claim will be made in accordance with the Plan.

**Effective Date** shall mean: (a) if no stay of the Confirmation Order is in effect, then the date which is a Business Day sixty (60) days following the date of the Confirmation Order.

**Equity Interest** shall mean the interests in the Debtor held by Holders of existing common stock, including any and all options, warrants or similar instruments for the acquisition of shares of existing common stock of the Debtor.

**Estate Assets** shall mean all the assets, property, and cash of the Debtor, as defined in § 541 of the Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtor prior to the Confirmation Date not otherwise subject to recovery),

wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitations the Causes of Action.

**Final Order** shall mean (a) an order, judgment, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Chapter 11 Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and to which (i) no appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has been taken and is pending and the time for filing such appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Fiscal Year** shall mean the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in that same calendar year.

**Funding Metrics** shall mean Funding Metrics, LLC, d/b/a Lendini.

**Funding Metrics Collateral** shall mean all assets of Debtor, then or later acquired, including all accounts, chattel paper, inventory, equipment, instruments, investment property, documents, deposit accounts, letter of credit rights, general intangibles, supporting obligations and all proceeds and products thereof.

**Governmental Authority** shall mean any agency, board, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or the State of Florida or any other State, provincial, territorial, municipal, local or other governmental entity in the United States or the Public Utilities Commission of any State or a foreign country.

**Holder** shall mean (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor or the Reorganized Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register maintained by the Debtor or the Transfer Agent or as otherwise determined by the Bankruptcy Court.

**Hyundai Finance** shall mean Hyundai Finance

**Hyundai Collateral** shall mean that certain 2017 Hyundai Tucson SE, VIN: KM8J23A47HU449791.

**Impaired** shall mean, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such shares or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

**IRS** shall mean the United States Department of Treasury-Internal Revenue Service.

**Liabilities** shall mean any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due, payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen and unforeseen, in law, equity or otherwise, of or relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, of any assets of the Debtor, the business or operations of the Debtor, the Chapter 11 Case, or the Plan, including any liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor or any other party with standing to bring such a challenge.

**Merchant Cash Advance Adversary** shall mean the adversary proceeding initiated by the Debtor against various merchant cash advance lenders.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Objection Deadline** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**ODC** shall mean On Deck Capital, Inc.

**ODC Collateral** shall mean any and all assets of Debtor then owned or later acquired or arising.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtor; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Person** shall mean any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in §101(41) of the Bankruptcy Code.

**Petition Date** shall mean October 22, 2015, the date on which the petition for relief was filed in the Debtor's Chapter 11 Case.

**Plan** shall mean this chapter 11 Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**Plan Payment** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Non-Tax Claim** shall mean a Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code.

**Priority Tax Claim** shall mean a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

**Proof of Claim** shall mean a proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to F.R.B.P. 3001, 3002, or 3003.

**Professional** shall mean (i) any professional retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to §1129(a)(4) of the Bankruptcy Code.

**Reorganized Debtor** shall mean Metro Finishes, LLC, following the Effective Date.

**Rule or Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy law. A Secured Claim which is challenged by the Debtor shall only be Allowed to the extent that such claim is deemed to be Allowed in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditors Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in § 101(51) of the Code.

**Unimpaired Claim** shall mean a Claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21, located in the Middle District of Florida, Orlando, Florida.

**Unsecured Claim** shall mean a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

**Unsecured Pot** shall mean the total amount of $126,300.15 which Metro shall pay *Pro Rata* to its Allowed Unsecured Claims in Class 11 if it does not otherwise pay all Allowed Class 11 Claims in full.

B.    **Bankruptcy Code Definitions**

Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan. The rules of construction in Bankruptcy Code §102 shall apply to the Plan.

C.    **Undefined Terms**

A term used in the Plan and not defined herein has the meaning ascribed to such term in the Bankruptcy Code or Rules.

D.    **Interpretation**

Unless otherwise specified, all sections, articles and exhibits referenced in the Plan are to the respective sections in, articles of, or exhibits to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a

stipulation or admission, but rather, as a statement made in settlement negotiations. Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be, the Bankruptcy Code or the Bankruptcy Rules definition will be controlling in the case of a conflict or ambiguity.

## ARTICLE II –CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    General Rules of Classification

Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class. If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class. Notwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by a classification made or implied herein.

### B.    Classifications

All Claims and Interests treated under Articles III - V of the Plan are divided into the following classes, which shall be mutually exclusive:

Class 1 – Chrysler Capital

Class 1 consists of the Allowed Secured Claim of Chrysler Capital. This Claim is secured by liens on the Chrysler Collateral. The Allowed Class 1 Secured Claim is approximately $33,812.29. This Class is Unimpaired.

Class 2 – Hyundai Finance

Class 2 consists of the Allowed Secured Claim of Hyundai Finance.  This claim is secured by a lien on the Hyundai Collateral.  The Allowed Class 2 Secured Claim is approximately $12,770.00.  This Class in Unimpaired.

Class 3 – ODC Secured (1-1)

Class 3 consists of the Secured Claims of ODC.  The Allowed Class 3 Secured Claim is $16,730.76 for financial projection purposes only, without conceding that ODC has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

Class 4-- ODC Secured (2-1)

Class 4 consists of the Secured Claims of ODC.   The Allowed Class 3 Secured Claim is $9,578.94 for financial projection purposes only, without conceding that ODC has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class is Impaired

<u>Class 5 – AFK Secured (5-1)</u>

Class 5 consists of the Allowed Secured Claim 5 of AFK.  The Allowed Class 5 Secured Claim is $31,722.78 for financial projection purposes only, without conceding that AFK has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

<u>Class 6 – Funding Metrics Secured (6-1)</u>

Class 6 consists of the Allowed Secured Claim 6 of Funding Metrics.  The Allowed Class 6 Secured Claim is $50,233.04 for financial projection purposes only, without conceding that Funding Metrics has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

<u>Class 7 – 1GC</u>

Class 7 consists of the holders of Disputed Claim of 1GC. This Disputed Class 7 Claim is $26,747.00 for financial projection purposes only, without conceding that 1GC has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

<u>Class 8 – CMS</u>

Class 8 consists of the holders of Disputed Claim of CMS. This Disputed Class 8 Claim is $32,098.75 for financial projection purposes only, without conceding that CMS has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

<u>Class 9 – Celtic</u>

Class 9 consists of the holders of Disputed Claim of Celtic. This Disputed Class 9 Claim is $19,059.16.00 for financial projection purposes only, without conceding that Celtic has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

<u>Class 10 - CFG</u>

Class 10 consists of the holders of Disputed Claim of CFG. This Disputed Class 10 Claim is $37,000.00 for financial projection purposes only, without conceding that Celtic has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

<u>Class 11 – General Unsecured Claims</u>

Class 11 consists of the Allowed Unsecured Claims against the Debtor. This Class is Impaired.

<u>Class 12 – Metro Funding, LLC, Equity Interests</u>

Class 12 consists of any and all membership interests and warrants currently issued or authorized in the Debtor. This Class is Unimpaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES

**A.    Administrative Claims**

1.    **Nonordinary Course Administrative Claims**

a.    Any person, including any professional who has rendered services to the Debtor during the course of this Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed *infra*, shall, on or before the Administrative Claims Bar date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of any basis for such Claim; provided, however, that applicants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of Nonordinary Course Administrative Expense Claim shall bar such claimant from seeking recovery on such Claim.

b.    Each holder of a Nonordinary Course Administrative Claim of the Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. Debtor's cash on hand as of the Effective Date shall be first used to pay Nonordianry Course Administrative Claims. However, nothing in this provision of the Plan shall preclude the Debtor from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms.

2.    **Ordinary Course Administrative Claims**

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

**B.    Priority Tax Claims**

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax Claim[1] against the Debtor shall receive on account of such Claim, the amount of such Holder's Allowed Claim in accordance with § 1129(a)(9)(c) of the Code, which will be paid based on a five (5) year amortization and maturity with payments made monthly. Holders of Allowed Secured Tax Claims shall receive

---

[1]Any difference between the amount of the Allowed Priority Tax Claim and the Allowed Claim that does not qualify for priority treatment under 11 U.S.C. 507(a)(8) shall be treated as a Class 7 General Unsecured Claim.

interest at the statutory rate. Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes Allowed.

## ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES

### Class 1 – Chrysler Capital
Class 1 consists of the Allowed Secured Claim of Chrysler Capital. This Claim is secured by liens on the Chrysler Collateral. The Allowed Class 1 Secured Claim is approximately $33,812.29. This Class is Unimpaired.

The Holder of the Allowed Secured Class 1 Claims shall retain the lien securing its collateral and its legal, equitable, and contractual rights will be unaltered by the Plan.

### Class 2 – Hyundai Finance
Class 2 consists of the Allowed Secured Claim of Hyundai Finance.  This claim is secured by a lien on the Hyundai Collateral.  The Allowed Class 2 Secured Claim is approximately $12,770.00.  This Class in Unimpaired.

The Holder of the Allowed Secured Class 1 Claims shall retain the lien securing its collateral and its legal, equitable, and contractual rights will be unaltered by the Plan.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS

### A.    Determination of Allowed Amounts
Treatment prescribed for Claims and Interests in the following sections of Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim included amounts subject to equitable subordination or other equitable relief. The Reorganized Debtor will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

### B.    Impairment/Classification Controversies
If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

### Class 3 – ODC Secured (Claim Number 1-1)
Class 3 consists of the Secured Claims of ODC.  The Allowed Class 3 Secured Claim is $16,730.76 for financial projection purposes only, without conceding that ODC has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

Class 3 claims will retain their lien on the ODC Collateral (if the Court determines the claims to be secured), and, if secured, shall receive modified repayment terms for the full amount of the Allowed Class 3 Claim as better described *infra*. The modified payment terms shall be paid from any and all lawful business means. On the first day of the month following the later of the  Effective Date or resolution of the Merchant Cash Advance Adversary, the Reorganized Debtor will commence making modified payments to ODC on account of its Allowed Secured Class 3 claim based upon fixed monthly payments of $335.25 based on a five-year (5) amortization and maturity, with interest at seven and one-half percent (7.5%) per annum. If the Allowed Class 3 Claim is paid in full on or prior to the maturity date, ODC shall release and terminate all security interest in all property owned by the Debtor. If the Court determines the claim to be unsecured, ODC shall be treated pursuant to Class 11.

### Class 4- ODC Secured (Claim Number 2-1)

Class 4 consists of the Secured Claims of ODC.   The Allowed Class 3 Secured Claim is $9,578.94 for financial projection purposes only, without conceding that ODC has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

Class 4 claims will retain their lien on the ODC Collateral (if the Court determines the claims to be secured), and, if secured, shall receive modified repayment terms for the full amount of the Allowed Class 4 Claim as better described *infra*. The modified payment terms shall be paid from any and all lawful business means. On the first day of the month following the later of the  Effective Date or resolution of the Merchant Cash Advance Adversary, the Reorganized Debtor will commence making modified payments to ODC on account of its Allowed Secured Class 4 claim based upon fixed monthly payments of $191.94 based on a five-year (5) amortization and maturity, with interest at seven and one-half percent (7.5%) per annum. If the Allowed Class 4 Claim is paid in full on or prior to the maturity date, ODC shall release and terminate all security interest in all property owned by the Debtor. If the Court determines the claim to be unsecured, ODC shall be treated pursuant to Class 11.

### Class 5 – AFK Secured (Claim Number 5-1)

Class 5 consists of the Allowed Secured Claim 5 of AFK.  The Allowed Class 5 Secured Claim is $31,722.78 for financial projection purposes only, without conceding that AFK has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

Class 5 claims will retain their lien on the AFK Collateral (if the Court determines the claims to be secured), and, if secured, shall receive modified repayment terms for the full amount of the Allowed Class 5 Claim as better described *infra*. The modified payment terms shall be paid from any and all lawful business means. On the first day of the month following the later of the  Effective Date or resolution of the Merchant Cash Advance Adversary, the Reorganized Debtor will commence making modified payments to AFK on account of its Allowed Secured Class 5 claim based upon fixed monthly payments of $264.36 based on a ten-year (10) amortization and maturity, without interest. If the Allowed Class 5 Claim is paid in full on or prior to the maturity date, AFK shall release and terminate all security interest in all property owned by the Debtor. If the Court determines the claim to be unsecured, AFK shall be treated pursuant to Class 11.

### Class 6 – Funding Metrics Secured (Claim Number 6-1)

Class 6 consists of the Allowed Secured Claim 6 of Funding Metrics.  The Allowed Class 6 Secured Claim is $50,233.04 for financial projection purposes only, without conceding that Funding Metrics has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

Class 6 claims will retain their lien on the Funding Metrics Collateral (if the Court determines the claims to be secured), and, if secured, shall receive modified repayment terms for the full amount of the Allowed Class 6 Claim as better described *infra*. The modified payment terms shall be paid from any and all lawful business means. On the first day of the month following the later of the  Effective Date or resolution of the Merchant Cash Advance Adversary, the Reorganized Debtor will commence making modified payments to Funding Metrics on account of its Allowed Secured Class 6 claim based upon fixed monthly payments of $418.61 based on a ten-year (10) amortization and maturity, without interest. If the Allowed Class 6 Claim is paid in full on or prior to the maturity date, Funding Metrics shall release and terminate all security interest in all property owned by the Debtor. If the Court determines the claim to be unsecured, AFK shall be treated pursuant to Class 11.

### Class 7 – 1GC

Class 7 consists of the holders of the Disputed Claim of 1GC. This Disputed Class 7 Claim is $26,747.00 for financial projection purposes only, without conceding that 1GC has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

Class 7 claims shall have their liens extinguished and be treated as Class 11 General Unsecured Claims as allowed pursuant to § 502 of the Bankruptcy Code.

### Class 8 – CMS

Class 8 consists of the holders of the Disputed Claim of CMS. This Disputed Class 8 Claim is $32,098.75 for financial projection purposes only, without conceding that CMS has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

Class 8 claims shall have their liens extinguished and be treated as Class 11 General Unsecured Claims as allowed pursuant to § 502 of the Bankruptcy Code.

### Class 9 – Celtic

Class 9 consists of the holders of Disputed Claim of Celtic. This Disputed Class 9 Claim is $19,059.16.00 for financial projection purposes only, without conceding that Celtic has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

Class 9 claims shall have their liens extinguished and be treated as Class 11 General Unsecured Claims as allowed pursuant to § 502 of the Bankruptcy Code.

### Class 10 - CFG

Class 10 consists of the holders of Disputed Claim of CFG. This Disputed Class 10 Claim is $37,000.00 for financial projection purposes only, without conceding that Celtic has any allowed claim, and subject to any and all of the Debtor's rights under §506 of the Bankruptcy Code.  This Class in Impaired.

18

Class 10 claims shall have their liens extinguished and be treated as Class 11 General Unsecured Claims as allowed pursuant to § 502 of the Bankruptcy Code.

### Class 11 – General Unsecured Claims

Class 11 consists of the Allowed Unsecured Claims against Metro. This Class is Unimpaired.

Metro will pay the holders of Class 11 Claims in full, except that the maximum sum to be paid shall not be greater than an aggregate sum of $126,300.15 (the "Unsecured Pot") which Metro believes is the maximum amount of legitimate Allowed Class 11 Clams. Each holder of an Allowed Unsecured Claim will be paid a *Pro Rata* share of the Unsecured Pot if not paid in full. Payments will be made over 120 months and shall commence on the thirtieth day after a final order determining all remaining Disputed Claims. Payments shall continue until the Unsecured Pot or 100% of all Class 11 Claims are paid in full.

### Class 12 – Metro Funding, LLC, Equity Interests

Class 12 consists of any and all membership interests and warrants currently issued or authorized in the Debtor. This Class is Unimpaired.

Class 12 shall receive a distribution on account of its equity interests.   All currently issue and outstanding Equity Interests in Metro shall be extinguished on the Effective Date and new Equity Interests in the Reorganized Debtor shall be re-vested Charles Marklin.

## ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If the Bankruptcy Court has not previously entered an order approving assumption, rejection and/or assignment of leases and executory contracts, then the Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions, assignments, and rejections of executory contracts and unexpired leases as of the Petition Date, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease. The Debtor and Reorganized Debtor intends to assign the executory contracts with all vendors and landlord.

If an executory contract or unexpired lease is assigned, then the other party to the agreement may file a Claim for damages incurred by reason of the assignment within such time as the Bankruptcy Court may allow or be forever barred. Such Claim shall be served upon the Debtor.  In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code. Such claims shall be deemed to be Class 11 General Unsecured Claims. The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

To the extent any indemnification obligation of the Debtor (whether pursuant to its charter, by-laws, agreement, or to law) existing as of the Petition Date to any current or former, officer, director or employee of the Debtor constitutes an executory contract, the Debtor shall be deemed to have rejected such contract immediately before the Petition Date pursuant to §365 of the Bankruptcy Code.

## ARTICLE VII – MEANS OF IMPLEMENTATION

**A.**     **Continued Corporate Existence**

The Debtor shall continue to exist as the Reorganized Debtor, doing business under the name Metro Finishes, LLC. The Reorganized Debtor's officers, directors and administrative structure shall be as follows:

1.     **Administrative Structure**
The following is a breakdown of the existing administrative structure:
a.     General Partner: Charles M. Marklin
b.     Limited Partners
b.     Employees
c.     Contract labor.

The above listed administrative structure will continue to operate the Reorganized Debtor and will supervise the business operations of the Debtor.

2.     **Officers**
The General Partner of the Reorganized Debtor shall remain the same as the General Partner of the Debtor. The General Partner shall have broad authority with respect to the conduct of the business of the Reorganized Debtor, including the right and power to enter into agreements regarding project bidding, vendor and sub-contractor selection, to borrow money to pay obligations, and to exercise all other specific powers described in the Reorganized Debtor's operating agreement.

3.     **Equity Interests in Reorganized Debtor**
After Confirmation but prior to the Effective Date all currently issued or authorized outstanding Equity Interests in Metro Finishes, LLC, shall be vested in general and limited partners as existed pre-petition.

**B.**     **Articles of Organization and Operating Agreement**

The Articles of Organization and Operating Agreement of the Debtor will be amended, as necessary, to include provisions required (a) under the Bankruptcy Code with respect to the Reorganized Debtor's equity interests and (b) the provisions of the Debtors' Plan. Consistent with Section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor's Articles shall, among other things, prohibit the issuance of nonvoting equity securities as part of the reorganization. The Operating Agreement of the Reorganized Debtor shall be amended as necessary for the purpose of consummating and implementing the transactions and acts contemplated by this plan. The Confirmation Order shall include appropriate language approving the Reorganized Debtor's Articles and the amended Operating Agreement.  The Reorganized Debtor's Articles and the amended Operating Agreement shall be the Articles and Operating Agreement governing the Reorganized Debtor on and after the Effective Date.

**C.**     **Post-Effective Date Operations**

The property of the Debtor's estate will transfer to the Reorganized Debtor on the Effective Date. Thereafter, the Reorganized Debtor will be allowed to operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code. All

property of the Reorganized Debtor will be free and clear of all Claims and Interests, except as specifically provided in the plan.

D.     **Means for Implementing Plan**

1.     **Business Operations and Cash flow**
The Plan contemplates that the Reorganized Debtor will continue to operate the Debtor's business. The Reorganized Debtor believes the Settlement Agreement will provide monies to pay all claims in full on the Effective Date.

2.     **Funds Generated During Chapter 11**
Except as explicitly set forth in this Plan, all cash in excess of operating expenses generated from operation until the Effective Date will be used for Plan Payments or Plan implementation; however, subject to the projections attached to the Disclosure Statement, cash on hand as of Confirmation shall be available for Administrative Expenses. Furthermore, proceeds obtained from the Merchant Cash Advance Adversary shall be used to pay the Class 11 General Unsecured Claims.

3.     **Section 1146 Exemption**
Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

4.     **Employment of Professionals Post-Confirmation**
After the Effective Date the Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtors prior to the Effective Date may also continue to serve the Reorganized Debtor.

E.     **Revesting of Assets**
The remaining property of the estate of the Debtor shall vest in the Reorganized Debtor on the Effective Date, except as otherwise provided in the Plan. As of the Effective Date, all property of the Debtor or Reorganized Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan.

F.     **Limitations of Liability**
The Debtor, and the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, shall have no liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the initial Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document relating to, rising out of or in connection with the Plan, unless the liability of any entity that would otherwise result from any such act or omission was the result of gross negligence.

## ARTICLE VIII – PROVISIONS GOVERNING DISTRIBUTION

**A.**    **Cash Payments**

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

**B.**    **Delivery of Distributions**

Distributions and deliveries to Holders of Allowed Claims and Interest shall be made at the addresses set forth on the proofs of Claim or Interest filed by such Holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor or Reorganized Debtor have been notified of a change of address). If any distribution to a Holder is returned as undeliverable, then no further distributions to such Holder shall be made unless and until the Debtor or Reorganized Debtor are notified of the Holder's then-current address, at which time all missed distributions shall be made to such Holder, without interest. All Claims for undeliverable distributions shall be made on or before the first anniversary of the Distribution Date. After such date, all unclaimed property shall revert to the Debtor or Reorganized Debtor, and the claim of any Holder with respect to such property shall be discharged and forever barred.

**C.**    **Time Bar to Cash Payments**

Checks issued by the Debtor or Reorganized Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any checks shall be made directly to the Debtor or Reorganized Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim with respect to such a voided check shall be made on or before the later of the first anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all Claims with respect to void checks shall be discharged and forever barred.

**D.**    **Transfer of Claim**

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, the Holder shall immediately notify the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of the transfer. The Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor has received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver, or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice thereafter shall be vested with all rights and powers of the transferor under the Plan.

## ARTICLE IX – PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS

**A.     Objection Deadline**

Unless extended by the Bankruptcy Court, the Debtor and the Reorganized Debtor shall file any objections to Claims or Interest no later than sixty (60) days after the Confirmation Date.

**B.     Prosecution of Objections**

The Debtor and the Reorganized Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims or Interests. All professional fees and expenses incurred by the Debtor or Reorganized Debtor from and after the Confirmation Date shall be paid as provided in Article III hereof.

**C.     No Distributions Pending Allowances**

No payments or distributions shall be made with respect to any Disputed Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

**D.     Escrow of Allocated Distributions**

The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims. As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made, or such obligations arise.  If practicable, Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

**E.     Distributions After Allowance**

Payments and distributions from escrow to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Disputed Claim become an Allowed Claim shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

**F.     Distributions After Disallowance**

If any property withheld in escrow remains after all objections to Disputed Claims of a particular Class have been resolved, then such remaining property, to the extent attributable to the Disputed Claims, shall be distributed as soon as practicable in accordance with the

provisions of the Plan governing the Class of Claims or Interest to which the Disallowed Claim or Interest belong.

## ARTICLE X – TRUSTEE FEES

All fees payable under 28 U.S.C. §1930, as determined by the Court at the hearing on confirmation of the Plan, will be paid on or before the Effective Date.

## ARTICLE XI – DISCHARGE, LIMITATION OF LIABILITY, GENERAL INJUNCTION AND CAUSES OF ACTION

### A.    General Injunction

Pursuant to §105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold, or may hold a Claim or other Debt, Liability or Equity Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Equity Interest, other than actions brought to enforce rights or Claims not discharged under the Plan, Confirmation Order, or the Plan documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor, Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan; (d) asserting a setoff, right of subrogation or recoupment of any kind against any Debt, Liability or obligation due to the Debtor, the Reorganized Debtor for the purpose of consummating and implementing the transactions and acts contemplated by this plan; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or Confirmation Order. The Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, shall have the right to independently seek enforcement of this general injunction provision.

### B.    No Liability for Tax Claims

Unless a taxing governmental authority has asserted a Claim against the Debtor before the Bar Date established therefor, no Claim of such Governmental authority shall be allowed against the Debtor or the Reorganized Debtor for taxes, penalties, interest, additions to the tax or other charges arising out of the failure, if any, of the Debtor, any of its affiliated, or any other Person or Entity, to have paid the tax or to have filed any tax return (including any excise tax return, income tax return or franchise tax return) in and for any period or arising out of any audit of any return for a period before the Petition Date. The Reorganized Debtor shall be

responsible for the filing of all unfiled tax returns of the Debtor relating to any period prior to the Effective Date.

### C.    Exculpation from Liability

Each of the listed parties shall have the right to individually seek enforcement of this provision. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

### D.    No Successor Liability

Except as otherwise provided in the Plan or in the Confirmation Order for the purpose of consummating and implementing the transactions and acts contemplated by this plan do not, and shall not be deemed to, pursuant to the Plan, or otherwise, assume, agree to perform, pay or indemnify any Holders of any Claims or Equity Interest or otherwise have any responsibilities for any Liabilities, Claims, Debts or obligations of the Debtor or the Reorganized Debtor, whether arising prior to, on or after the Effective Date, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, is not, nor shall it be deemed to be a successor or successor in interest to the Debtor by reason of any theory of law or equity, and shall have no successor or transferee liability of any kind or character, and the Confirmation Order shall contain language to this effect.

## ARTICLE XII – RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain the fullest and most expansive jurisdiction that is permitted under applicable law to issue any order or process to carry out the provisions of the Plan, including, but not limited to, determine all claims, enforce all obligations established in the Plan and the Confirmation Order, adjudicate any adversary proceeding or contested matter pending on the Confirmation Date or contemplated in the Plan or available under the Plan, determine any application for the allowance of compensation pursuant to §330, 331 or 503(b), to enforce and interpret the Plan and to resolve any dispute and questions of any kind arising in connection with any act arising out of or contemplated by the Plan and the rights created herein or in the Confirmation Order.

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as set forth specifically in the preceding paragraph.

## ARTICLE XIII – MISCELLANEOUS

### A.    Modification of the Plan

The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rule requirements.

After entry of the Confirmation Order, the Debtor or the Reorganized Debtor (as the case may be) may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (a) the Debtor or the Reorganized Debtor (as the

case may be) obtains approval of the Bankruptcy Court for such modification, after notice and hearing, and (b) such modification shall not materially or adversely affect the interests for the purpose of consummating and implementing the transactions and acts contemplated by this plan, or the interests, rights, treatment, or distributions of any Class of Allowed Claims or Equity Interests under the Plan.

After the Confirmation Date, and before substantial consummation of the Plan, the Debtor or the Reorganized Debtor (as the case may be) may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Equity Interests, provided that: (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtor or the Reorganized Debtor obtains Bankruptcy Court approval of such modification, after notice and hearing; and (c) such modification is accepted by a least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of Allowed Claims or by at lease two-thirds (2/3) in amount of Allowed Equity Interests voting.

### B.    Confirmation Order and Plan Control

To the extent that the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (and any other orders of the Bankruptcy Court) shall be construed together with the terms of the Plan.

### C.    Governing Law

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

### D.    No Admissions

Nothing herein shall be construed to be an admission of any fact by the Debtor or otherwise binding upon the Debtor in any manner prior to the Effective Date.

### E.    Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to: (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

### F.    Further Assurances

The Debtor or the Reorganized Debtor (as the case may be) agree, and is/are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements, and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

G. **Notices**

All notices, requests, or other documents in connection with, or required to be served by the Plan shall be in writing and shall be sent by United States Mail, postage prepaid, or by overnight delivery by a recognized courier service to the following:

Counsel for the Debtor and Reorganized Debtor:

Jeffrey S. Ainsworth, Esquire
1501 East Concord Street
Orlando, Florida 32803

Debtor and Reorganized Debtor:

Metro Finishes, LLC
Attn.: Charles M. Marklin
1515 Vassar Street
Orlando, Florida 32804

United States Trustee:

Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 3100
Orlando, Florida 32801

H. **Estimated Claims**

To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claims be Allowed in an amount Greater than the estimated amount.

I. **Consent to Jurisdiction**

Except to the extent that any agreement, including any loan-related document emanating from this Plan provides for jurisdiction in another forum, upon any default under the Plan, the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions contemplated by this Plan, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Chapter 11 Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors, and foreign parties in interest, have consented and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article II of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article II of the Plan.

**J.      Modification of Payment Terms**

   The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in §1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon consent of the Holder of such Allowed Claim.

**K.      Compliance with Tax Requirements**

   In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distribution, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

**L.      Distribution of Unclaimed Property**

   Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Reorganized Debtor.

Dated: May 24, 2019

         /s/ Jeffrey S. Ainsworth      
        Jeffrey S. Ainsworth, Esquire
        Fla. Bar No.: 060769
        E-mail: *jeff@bransonlaw.com*
        **BransonLaw, PLLC**
        1501 E. Concord Street
        Orlando, Florida 32803
        Telephone (407) 894-6834
        Fax (407) 894-8559
        Attorney for Debtor